**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| SOUTHSTAR FINANCIAL, LLC, | ) | CASE NO.: 2:26-cv-03171-BHH |
| | ) | |
| Plaintiff, | ) | |
| | ) | **COMPLAINT** |
| v. | ) | **(NON-JURY)** |
| | ) | |
| PURE AVIATION, LLC (MT) and PURE | ) | |
| AVIATION, LLC (WY), | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

COMES NOW Plaintiff SouthStar Financial, LLC ("Plaintiff" or "SouthStar"), by and through undersigned counsel, and hereby submits this Complaint against Defendants Pure Aviation, LLC (MT) ("Pure Aviation MT") and Pure Aviation, LLC (WY) (Pure Aviation WY," and together with Pure Aviation MT, the "Defendants") based on the allegations set forth below:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff SouthStar is a South Carolina limited liability company organized and existing under the laws of South Carolina, with its principal place of business located in the State of South Carolina. SouthStar is a single-member limited liability company, whose ultimate members are citizens and residents of South Carolina.

2. Upon information and belief, Defendant Pure Aviation, LLC (MT) is a Montana limited liability company organized and existing under the laws of Montana with its principal place of business in the State of Montana.  Upon information and belief,

the sole individual member of Pure Aviation MT is a citizen and resident of the State of Texas.

3.     Upon information and belief, Defendant Pure Aviation, LLC (WY) is a Wyoming limited liability company organized and existing under the laws of Wyoming with its principal place of business in the State of Wyoming.  Upon information and belief, the ultimate individual member(s) of Pure Aviation WY are citizen(s) and resident(s) of the State of Texas.

4.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a), as there is complete diversity among the parties, and Plaintiff's damages exceed Seventy-Five Thousand and 00/100 Dollars ($75,000.00), exclusive of interest and expenses.

5.     Venue is proper in this Court pursuant to the mandatory choice of law and mandatory venue provisions contained in the Notices of Purchase of Accounts Receivable and Estoppel Agreements executed by Pure Aviation MT, whereby the parties agreed that any dispute relating to the Estoppel Agreement shall be brought exclusively in South Carolina.

## STATEMENT OF FACTS

6.     Plaintiff hereby incorporates the foregoing paragraphs above as though fully set forth herein.

7.     Plaintiff SouthStar is a commercial finance company that provides liquidity to operating businesses through invoice factoring and related financing arrangements.

8.      In a factoring transaction, SouthStar purchases accounts receivable and payment intangibles from its clients at a discount and, in exchange, provides immediate capital advances to those clients.

9.      Upon purchase of the receivable, SouthStar provides notice of assignment to account debtors after purchase, directing that payment be made directly to SouthStar as assignee pursuant to UCC § 9-406(a), as codified in South Carolina Code section 36-9-406(a).

10.      Because SouthStar relies upon payment from the account debtor, SouthStar verifies its purchased receivables through direct confirmations from account debtors regarding the validity of invoices and their obligation to pay SouthStar.

11.      SouthStar's primary verification procedure is to obtain a Notice of Purchase of Accounts Receivable and Estoppel Agreement ("Estoppel Agreement") from the account debtor.

12.      Through an Estoppel Agreement, the account debtor confirms that the invoices are valid, due, and owing; agrees to remit payment directly to SouthStar; and waives any defenses, setoffs, deductions, or counterclaims against SouthStar.

13.      SouthStar relies upon these representations because the account debtor is in the best position to confirm whether the underlying goods or services were delivered, whether the invoices are accurate, and whether payment is owed.

The Factoring Relationship Between SouthStar and Caltex

14.      On or about September 30, 2019, SouthStar entered into a Non-Recourse Factoring and Security Agreement (the "Factoring Agreement") with Caltex Energy

International, LLC ("Caltex"), pursuant to which SouthStar agreed to purchase Caltex's accounts receivable and related payment rights arising from Caltex's sale of goods and services.

15.     Pursuant to the Factoring Agreement, Caltex sold, assigned, and transferred to SouthStar its rights, title, and interest in certain accounts receivable, including receivables arising from invoices issued by Caltex to its customer, Pure Aviation MT.

<u>Notice of Assignment and Pure Aviation's Payment Obligations</u>

16.     Caltex and Pure Aviation MT maintained an ongoing commercial relationship involving the acquisition, transportation, and resale of ultra-low sulfur diesel fuel transported by rail.

17.     On or about March 3, 2021, SouthStar served Pure Aviation MT with a Notice of Assignment ("NOA") pursuant to UCC § 9-406 (as codified in S.C. Code Ann. § 36-9-406), notifying Pure Aviation MT that all amounts due to Caltex had been assigned to SouthStar and that payment could only be properly made to SouthStar. A true and correct copy of the NOA is attached hereto as **Exhibit 1**.

18.     The NOA advised Pure Aviation MT that payment obligations relating to the assigned accounts were to be made directly to SouthStar and that, pursuant to UCC § 9-406, payment to Caltex would not discharge Pure Aviation MT's obligations.

19.     Upon receipt of the NOA, Pure Aviation MT became obligated to remit payment on the assigned accounts directly to SouthStar.

## The Underlying Transactions and Invoices

20.    On or about July 1, 2021, Caltex issued Invoice No. CAL-PA07012021 to Pure Aviation MT in the amount of $1,647,259.70 ("Invoice No. 1"). Caltex presented Invoice No. 1 to SouthStar for purchase. SouthStar purchased Invoice No. 1 pursuant to the Factoring Agreement and advanced funds in reliance upon the invoice, the supporting shipment documentation, and Pure Aviation MT's representations that the invoice was valid and would be paid. A true and correct copy of Invoice No. 1 is attached hereto as **Exhibit 2**.

21.    Because Invoice No. 1 remained outstanding for a period of time, financing charges continued to accrue under the Factoring Agreement, thereby increasing the Factor Due associated with that receivable.

22.    Before Invoice No. 1 was fully satisfied, Pure Aviation MT and Caltex entered into an additional fuel transaction involving a subsequent purchase order. Rather than maintain separate outstanding invoices and continue accruing financing charges on Invoice No. 1, the parties agreed to consolidate the existing indebtedness into a single replacement receivable.

23.    Accordingly, on or about September 30, 2021, Caltex issued Invoice No. CAL-PA09302021 in the principal amount of $2,365,618.06 ("Invoice No. 2"). Invoice No. 2 was not intended to evidence an entirely new debt. Instead, it incorporated: (a) the new fuel transaction; (b) the unpaid balance remaining under Invoice No. 1; and (c) the accumulated Factor Due associated with Invoice No. 1, thereby replacing the earlier

receivable with one consolidated obligation. A true and correct copy of Invoice No. 2 is attached hereto as **Exhibit 3**.

24.     Both Invoice No. 1 and Invoice No. 2 identified Pure Aviation MT as the account debtor and were issued to Pure Aviation MT at 302 N. Last Chance Gulch, Suite 403, Helena, Montana 59601. At no time on the face of the Invoices did Caltex identify Pure Aviation WY as the account debtor.

25.     The issuance of Invoice No. 2 allowed Invoice No. 1 to be closed, the accrued financing charges associated with Invoice No. 1 to be resolved, and all amounts then owed by Pure Aviation MT to be reflected in a single operative invoice. From that point forward, Invoice No. 2 constituted the account purchased by SouthStar and the account upon which Pure Aviation MT remained obligated to make payment.

The NOPs/Estoppel Agreements

26.     As part of SouthStar's standard verification procedures, SouthStar required Pure Aviation MT, as the account debtor, to execute two Estoppel Agreements, commonly referred to as a Notice of Purchase of Accounts Receivable (the "Estoppel Agreements"), to verify the Invoices and confirm payment obligations. (**Exhibits 4 & 5**.)

27.     Estoppel agreements, including these two Estoppel Agreements, are a direct contract between the factor and the account debtor, which obligates the account debtor to pay the factor – here, SouthStar.

28.     Pure Aviation MT executed one Estoppel Agreement on or about July 2, 2021 (the "First Estoppel Agreement"). The First Estoppel Agreement was transmitted to

Pure Aviation MT, with the corporate address of 302 N Last Chance Gulch, Suite 403, Helena, MT 59601 being reflected. *See* **Exhibit 4** – the First Estoppel Agreement.

29.     Pure Aviation MT executed the second Estoppel Agreement on or about October 1, 2021 (the "Second Estoppel Agreement"). Like the First Estoppel Agreement, the Second Estoppel Agreement was issued to and executed by Pure Aviation MT, not Pure Aviation WY. *See* **Exhibit 5** – the Second Estoppel Agreement.

30.     In both Estoppel Agreements, Pure Aviation MT expressly represented and agreed that it was indebted on the Invoices; the Invoices were correct, due, and owing; the Invoices would be paid to SouthStar; and that payment would be made without recoupment, setoff, defense, counterclaim, or any deduction. Specifically, the Estoppel Agreement states in pertinent part:

> As assignee of the accounts of the Vendor, the Vendor has advised us that you are indebted to them on the invoices listed on the schedule below (the 'Invoices'). We may continue extending financial accommodations to them in reliance on the Invoices listed below and the representations in this this letter. As such, please have an authorized representative of your company sign below to confirm the representation that all Invoices will be paid by you to SouthStar without recoupment, setoff, defense, counterclaim or contra or contra related deduction, and that no contra payments or credits will be  applied from this date forward.

31.     SouthStar's Estoppel Agreements also contain mandatory choice of law and choice of venue provisions that the account debtor agrees to by signing. The mandatory choice of law and choice of venue provision states: "This agreement will be interpreted and construed in accordance with the laws of the state of South Carolina, and any action or proceeding related to this agreement shall be brought in the courts located within the State of South Carolina." (**Exhibits 4 & 5**.)

32.     The Estoppel Agreements further provide that the prevailing party in any enforcement action is entitled to recover its attorneys' fees and costs. (*Id.*)

33.     At all relevant times, Pure Aviation MT's Managing Member and authorized representative had authority to execute the Estoppel Agreements on Pure Aviation MT's behalf.

<u>Pure Aviation MT's Payments, Outstanding Balance, and Account History</u>

34.     Following execution of the Estoppel Agreements, one of the Pure Aviation entities made payments toward the outstanding balance due to SouthStar (the "Caltex Debt"). Upon information and belief, these payments came from Pure Aviation MT.

35.     Thereafter, after Pure Aviation MT defaulted on its payment obligations, the parties entered into a written Payment Plan dated July 11, 2022 (the "Payment Plan"), which was executed by Pure Aviation MT's Managing Member and authorized representative on behalf of Pure Aviation MT. Pursuant to the Payment Plan, Pure Aviation MT acknowledged the outstanding indebtedness arising from Invoice No. CAL-PA09302021 and agreed to repay the remaining balance according to a negotiated payment schedule.

36.     The terms of the Payment Plan required Pure Aviation MT to make two initial payments of $50,000.00, followed by monthly payments of $100,000.00 until the Outstanding Invoice, together with all accrued charges, was paid in full.

37.     Consistent with the Payment Plan, SouthStar's payment ledger reflects that, between September 16, 2022, and August 2, 2023, Pure Aviation MT made twelve (12) separate payments totaling $747,501.83 toward the Caltex Debt.

38.     Those payments reduced the outstanding Caltex Debt balance from $2,365,618.06 to $1,618,116.23, which remains due and owing to SouthStar, exclusive of any recoverable interest, attorneys' fees, costs, and other amounts recoverable under the parties' agreements and applicable law.

39.     Pure Aviation MT's final payment to SouthStar was made on August 2, 2023, in the amount of $46,489.46, completing the July 2023 installment. The next monthly payment of $100,000.00 became due under the Payment Plan on or about August 5, 2023, but no further payments were made. Pure Aviation MT has remained in default under the Payment Plan since that time.

40.     The execution of the Payment Plan, together with Pure Aviation MT's partial payments thereunder, constitutes acknowledgment of the validity of the Caltex Debt and the correctness of the account reflected on Invoice No. 2 less payments made.

41.     Notwithstanding the execution of two Estoppel Agreements and the Payment Plan, together with Pure Aviation MT's partial payments and its subsequent written acknowledgment that the outstanding Caltex Debt balance was $1,618,116.23, Pure Aviation MT has failed and refused to satisfy the remaining indebtedness.

42.      Since the summer of 2023, SouthStar has requested confirmation from Pure Aviation MT that the $1,618,116.23 remains due and owing, and SouthStar has requested payment of that Caltex Debt balance by Pure Aviation MT.

43.     On June 16, 2025, Pure Aviation MT's Managing Member and authorized representative emailed SouthStar and expressly acknowledged the amount owed. Specifically, he stated: ". . . to whom it may concern I acknowledge balance owed to

SouthStar, the outstanding amount is $1,618,116.23." A true and correct copy of this e-mail correspondence is attached hereto as **Exhibit 6**.

44.    This acknowledgment was consistent with SouthStar's payment ledger, the outstanding invoices, Pure Aviation MT's prior payments, and the obligations confirmed through the Estoppel Agreements.

45.    After acknowledging the Caltex Debt amount, Pure Aviation MT's representative later communicated to SouthStar and represented that Pure Aviation WY (not Pure Aviation MT) was the entity responsible for paying the Caltex Debt.

46.    This correspondence is inconsistent with the underlying transaction documents. Both Caltex invoices at issue – Invoice No. 1 (CAL-PA07012021) and Invoice No. 2 (CAL-PA09302021) – were issued to Pure Aviation MT at 302 N. Last Chance Gulch, Suite 403, Helena, Montana 59601, and not to Pure Aviation WY. *See* **Exhibit 4** and **Exhibit 5**.

47.    The Estoppel Agreements were executed by the authorized representative of Pure Aviation MT on Pure Aviation MT's behalf. Upon information and belief, all payments to SouthStar of the Caltex Debt were paid by Pure Aviation MT.

### FOR A FIRST CAUSE OF ACTION
**(Declaratory Judgment)**

48.    Plaintiff hereby incorporates the foregoing paragraphs above as though fully set forth herein.

49.    This Court has authority to grant SouthStar declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and FED. R. CIV. P. 57.

50.     SouthStar entered into two Estoppel Agreements with Pure Aviation MT on July 2, 2021 and October 1, 2021, respectively.

51.     The Caltex invoices underlying those two Estoppel Agreements listed the buyer as Pure Aviation MT.

52.     On June 16, 2025, Pure Aviation MT's Managing Member and authorized representative emailed SouthStar and expressly acknowledged the balance owed to SouthStar related to the Estoppel Agreements and the Caltex invoices was $1,618,116.23. (**Exhibit 6**.)

53.     However, on April 7, 2026, Pure Aviation MT's representative asserted that it was Pure Aviation WY that was responsible for the Caltex Debt, not Pure Aviation MT.

54.     Because the transactional documents reflect that Pure Aviation MT was listed as a party on the Caltex Invoices, was the party to the Estoppel Agreements with SouthStar, and was the entity that paid all Caltex Debt sums to SouthStar, and was the party to the Payment Plan, Pure Aviation MT is the entity that is responsible for payment of the Caltex Debt balance due of $1,618,116.23.

55.     SouthStar requests an entry of judgment declaring that Pure Aviation MT, not Pure Aviation WY, is the entity responsible for payment of the Caltex Debt balance due.

## FOR A SECOND CAUSE OF ACTION
### (Breach of Contract – Estoppel Agreements)

56.     Plaintiff hereby incorporates the foregoing paragraphs above as though fully set forth herein.

57.     The Estoppel Agreements executed by Pure Aviation MT constitute valid and enforceable contracts between SouthStar and Pure Aviation MT.

58.     SouthStar delivered the Estoppel Agreements to Pure Aviation MT on July 2, 2021 and October 1, 2021, respectively, whereby Pure Aviation MT acknowledged, signed, and accepted the following terms:

   a.   That the Invoices listed therein would be paid to SouthStar;

   b.   That the Invoices listed therein would be paid without recoupment, setoff, defense, counterclaim or contra or claims of contra related deduction asserted against SouthStar; and

   c.   That no contra payments or credits would be applied from the date of each Estoppel Agreement.

59.     SouthStar fully performed its obligations under the Estoppel Agreements by purchasing the identified receivables, advancing funds pursuant to the factoring arrangement, and relying upon Pure Aviation MT's representations regarding the validity and payment of the invoices.

60.     Pure Aviation MT materially breached the Estoppel Agreements by failing to pay the amounts due under Invoice No. 2.

61.     The Estoppel Agreements provide that SouthStar is entitled to recover its attorneys' fees and costs incurred in enforcing its rights.

62.     Alternatively, if this Court finds that Pure Aviation WY is the party responsible for payment of the $1,618,116.23 Caltex Debt balance due, Pure Aviation WY materially breached the Estoppel Agreements by failing to pay the Caltex Debt sums due, and SouthStar has been damaged by Pure Aviation WY's breach.

63.     As a direct and proximate result of one or both of the Defendants' breach, SouthStar has suffered damages in an amount not less than $1,618,116.23, together with interest, attorneys' fees, costs, and all other recoverable damages.

**FOR A THIRD CAUSE OF ACTION**
**(Promissory Estoppel)**

64.     Plaintiff hereby incorporates the foregoing paragraphs above as though fully set forth herein.

65.     Pure Aviation MT made clear and unequivocal promises to SouthStar concerning the validity of the receivables, the indebtedness owed by Pure Aviation MT, and Pure Aviation MT's obligation to pay the purchased accounts directly to SouthStar.

66.     Specifically, through the Estoppel Agreements, Pure Aviation MT, represented and promised that the invoices issued by Caltex were valid, due, and owing; that Pure Aviation MT was obligated to pay the invoices to SouthStar; and that such payments would be made without recoupment, setoff, defense, counterclaim, or deduction.

67.     In addition to the written promises contained in the Estoppel Agreements, Pure Aviation MT repeatedly acknowledged the validity of the indebtedness, including by making twelve (12) separate payments totaling $747,501.83 toward the Caltex Debt and by its authorized representative's written acknowledgment on June 16, 2025, confirming that the outstanding Caltex Debt balance owed to SouthStar was $1,618,116.23.

68. The promises and representations made by Pure Aviation MT were clear, definite, and reasonably calculated to induce SouthStar to rely upon them in connection with SouthStar's purchase of Caltex's receivables and continued extension of financial accommodations.

69. SouthStar reasonably relied upon Pure Aviation MT's promises and representations by purchasing the receivables identified in the Invoices, advancing funds pursuant to the Factoring Agreement with Caltex, and foregoing other collection efforts based upon Pure Aviation MT's repeated confirmations that the amounts owed would be paid.

70. Defendants reasonably expected or should have expected that SouthStar would rely upon those promises and representations because Pure Aviation MT was the account debtor obligated to satisfy the purchased receivables and was the party with direct knowledge concerning the underlying transactions and payment obligations.

71. SouthStar's reliance was reasonable and foreseeable because Pure Aviation MT was uniquely positioned to verify the validity of the invoices, confirm that the fuel transactions occurred, and assure SouthStar that payment would be made.

72. Despite making these promises and inducing SouthStar's reliance, Pure Aviation MT has failed and refused to pay the remaining Caltex Debt balance.

73. Alternatively, if this Court finds that Pure Aviation WY is the party responsible for payment of the $1,618,116.23 balance due, Pure Aviation WY, through Defendant DiMarco, made clear and unequivocal promises to SouthStar concerning the validity of the receivables, the indebtedness owed by Pure Aviation WY, and Pure

Aviation WY's obligation to pay the purchased accounts directly to SouthStar. Pure Aviation WY reasonably expected that its promises would cause SouthStar to continue extending financial accommodations related to Caltex's receivables, and SouthStar did in fact reasonably rely upon Pure Aviation WY's promises, to its detriment, and SouthStar has been damaged thereby in an amount not less than $1,618,116.23, together with prejudgment interest, attorneys' fees, costs, and all other damages available under applicable law.

74.     As a direct and proximate result of one or both of the Defendants' failure to honor its promises and representations, SouthStar has suffered damages in an amount not less than $1,618,116.23, together with prejudgment interest, attorneys' fees, costs, and all other damages available under applicable law.

## FOR A FOURTH CAUSE OF ACTION
### (Account Stated)

75.     Plaintiff hereby incorporates the foregoing paragraphs above as though fully set forth herein.

76.     SouthStar rendered statements, invoices, accountings, and payment records reflecting the amounts owed by Pure Aviation MT arising from the purchased accounts, including the invoices issued by Caltex and assigned to SouthStar.

77.     Pure Aviation MT received and accepted those statements and account information, including by making repeated partial payments without objection, and did not dispute the amounts reflected therein.

78.     In addition to its receipt and acceptance of the account statements, Pure Aviation MT expressly acknowledged the debt through the Estoppel Agreements and its authorized representative's written acknowledgment dated June 16, 2025, confirming that the outstanding balance owed to SouthStar was $1,618,116.23.

79.     Pure Aviation MT's partial payments toward the account further constitute acknowledgment of the validity of the account and the amounts owed.

80.     Pure Aviation MT's Payment Plan further constitutes acknowledgment of the validity of the account and the amounts owed.

81.     Accordingly, through Pure Aviation MT's receipt of the account statements, repeated partial payments, execution of the Estoppel Agreements, express written acknowledgment of the remaining balance, and Payment Plan, Pure Aviation MT assented to the correctness of the account, thereby creating an account stated.

82.     Despite acknowledging the account, making partial payments, entering a Payment Plan on the Caltex Debt, and explicitly confirming the Caltex Debt amount due, Pure Aviation MT has failed and refused to pay the remaining Caltex Debt balance owed to SouthStar.

83.     Alternatively, if this Court finds that Pure Aviation WY is the party responsible for payment of the $1,618,116.23 balance due, through Pure Aviation MT's receipt of the account statements, repeated partial payments, execution of the Estoppel Agreements, and express written acknowledgment of the remaining balance, Pure Aviation WY assented to the correctness of the Caltex Debt account, thereby creating an

account stated. Despite this, Pure Aviation WY has failed and refused to pay the remaining balance owed to SouthStar.

84.    As a direct and proximate result of one or both of the Defendants' failure to pay the account stated, SouthStar has suffered damages in an amount not less than $1,618,116.23, together with prejudgment interest, attorneys' fees, costs, and all other available relief.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff SouthStar respectfully requests that this Court enter judgment in its favor and against Pure Aviation MT and:

A.    Enter a declaratory judgment that Pure Aviation MT is the entity that is responsible for paying the Caltex Debt balance due to SouthStar;

B.    Enter judgment declaring that Invoice No. 2 and the underlying account obligation are valid, enforceable obligations owed to SouthStar by Pure Aviation MT and/or by Pure Aviation WY;

C.    Enter judgment that SouthStar is entitled to its actual damages from Pure Aviation MT and/or by Pure Aviation WY in an amount not less than $1,618,116.23;

D.    Enter judgment that SouthStar is entitled to pre-judgment and post-judgment interest from Pure Aviation MT and/or by Pure Aviation WY;

E.    Enter judgment that SouthStar is entitled to reasonable attorneys' fees and costs pursuant to the Estoppel Agreements from Pure Aviation MT and/or by Pure Aviation WY; and

F.    Such other and further relief as the Court deems just and proper.

Respectfully submitted,

**COOPER | TIERNEY**

/s/ *Lindsey W. Cooper Jr.*
Lindsey W. Cooper Jr. (Fed Bar No. 9909)
M. Linsay Boyce (Fed Bar No. 11952)
Charlie W. Patrick (Fed Bar No. 13029)
36 Broad Street, 3rd Floor
Charleston, SC  29401
Telephone: (843) 375-6622
Facsimile: (843) 375-6623
Email: lwc@coopertierney.com
          linsay@coopertierney.com
          cwp@coopertierney.com

*Attorneys for SouthStar Financial, LLC*

Dated:  July 31, 2026
Charleston, South Carolina